FILED

**NOT FOR PUBLICATION**

MAR 14 2013

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HERRING BROADCASTING, INC., DBA Wealth TV, <br><br> Petitioner, <br><br> v. <br><br> FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES OF AMERICA, <br><br> Respondents, <br><br> BRIGHT HOUSE NETWORKS, LLC; COMCAST CORPORATION; COX COMMUNICATIONS, INC.; TIME WARNER CABLE, INC., <br><br> Respondents-Intervenors. | No. 11-73134 <br><br> FCC No. 08-214 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Federal Communications Commission

Argued and Submitted March 7, 2013
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: PAEZ and WATFORD, Circuit Judges, and KOBAYASHI, District Judge.[**]

Herring Broadcasting, Inc., which does business as WealthTV, petitions for review of an order by the Federal Communications Commission (FCC) concluding that Time Warner Cable, Inc., Bright House Networks, LLC, Cox Communications, Inc., and Comcast Corporation (collectively Intervenors) did not violate 47 U.S.C. § 536(a)(3) in denying carriage to WealthTV. The four Intervenors jointly own a company called iN DEMAND, which for several years operated a network called MOJO. WealthTV alleges that the Intervenors impermissibly discriminated on the basis of affiliation in favor of MOJO and against WealthTV. The FCC concluded that the Intervenors denied carriage to WealthTV for legitimate, nondiscriminatory business reasons and that WealthTV could not prove its claim by showing differential treatment of MOJO because the two networks were not similarly situated.

1.      The FCC's determination that WealthTV and MOJO were not similarly situated is supported by substantial evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). First, the agency reasonably relied on the expert testimony of Michael Egan to conclude that the two networks did not show

[**]      The Honorable Leslie E. Kobayashi, United States District Judge for the District of Hawaii, sitting by designation.

2

similar programming.  WealthTV argues that the agency's rejection of Egan's conclusions in a later case undermines its reliance on Egan here.  Even assuming that inconsistency with a later agency decision would undermine the validity of the FCC's analysis in this case, we conclude that no such inconsistency has been shown.  Egan himself acknowledged that he was applying two different modes of analysis in the two cases.  Thus, there was nothing inconsistent about the agency finding the mode of analysis Egan applied to be persuasive in this case and not in the other.

The agency also reasonably relied on Egan's conclusion that the two networks had a different "look and feel."  WealthTV provides no authority to suggest that it is unreasonable to consider "look and feel" as one factor in determining how similar two television networks are.  The out-of-circuit case on which WealthTV relies is readily distinguishable because the FCC there "nowhere even vaguely described how it aggregated its findings into the decisive balance," but rather relied on an "administrative feel," which the D.C. Circuit found was "completely opaque to judicial review."  *Cent. Fla. Enters., Inc. v. FCC*, 598 F.2d 37, 50 (D.C. Cir. 1978).  Here, by contrast, the FCC's overall analysis was carefully reasoned and not intuition-based.

Finally, the FCC reasonably concluded, based on WealthTV's own marketing materials, that WealthTV targeted a broader audience than MOJO did. The record does not support WealthTV's argument that those marketing materials were describing WealthTV's actual audience and were misconstrued by the FCC as describing its target audience.

2.      WealthTV argues that the agency erred by not applying the burden-shifting framework used in employment discrimination cases. However, even under the employment discrimination framework, WealthTV's claim would still hinge on whether the two networks were similarly situated. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). Moreover, burden shifting would not have made a difference here because the FCC reasonably determined that, regardless of which party bore the burdens of production and proof, the two networks were not similarly situated. Finally, although WealthTV alludes to other reasons why a burden-shifting approach would have helped its case, it points to nothing concrete that it would have done differently in presenting its case. Thus, the FCC did not err in declining to decide whether a burden-shifting framework should have been used in this case.

3.      WealthTV argues that the agency made two incorrect evidentiary rulings. We conclude that, even assuming either evidentiary ruling was error, any

4

such error would have been harmless.  *See* 5 U.S.C. § 706; *Molina v. Astrue*, 674

F.3d 1104, 1115 (9th Cir. 2012).

4.      We find WealthTV's remaining arguments unpersuasive.  The record

contradicts WealthTV's contentions that the agency improperly required

WealthTV to prove discrimination with direct evidence, and that the agency

overlooked evidence that the two networks targeted the same prospective

advertisers.  WealthTV's argument that the agency erred in relying on the fact that

WealthTV launched after MOJO's predecessor networks is improperly premised

on a later agency decision involving very different facts.

**PETITION FOR REVIEW DENIED.**

5